Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard, First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUSTIN ASBURY,<br><br>                         Plaintiff,<br><br>             vs.<br><br>PAYA HOLDINGS INC., AARON COHEN, JEFF HACK, DEBORA BOYDA, ONI CHUKWU, MIKE GORDON, KJ McCONNELL, COLLIN ROCHE, SID SINGH, ANNA MAY TRALA, and STUART YARBROUGH<br><br>                         Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2)  Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Dustin Asbury ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.        Plaintiff brings this stockholder action against Paya Holdings Inc. ("Paya" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Nuvei Corporation ("Parent"), through merger vehicle Pinnacle

Merger Sub, Inc.. ("Merger Sub" collectively with Parent, "Nuvei") as a result of an unfair process, and to enjoin an upcoming tender off on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a January 9, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Paya shareholders will receive $9.75 in cash in exchange for each share of Paya owned. As a result of the consummation of the Proposed Transaction, Paya will become an indirect wholly-owned subsidiary of Nuvei.

3.      Thereafter, on January 24, 2022, Paya filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Recommendation Statement describes an insufficient process with only one goal in mind – to sell the Company to Nuvei.

5.      Notably, the Recommendation Statement fails to disclose whether a committee of disinterested directors was appointed to manage the sales process, and if so, what powers that committee had in reviewing the Proposed Transaction, including whether the committee had the ability to veto a potential transaction that was not in the best interests of shareholders.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and

executive officers will be able to exchange all Company equity awards for the merger consideration.

7.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Paya shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Paya, provided by Paya to the Company's financial advisors J.P. Morgan Securities LLC ("J.P. Morgan") and Raymond James & Associates, Inc. ("Raymond James"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by J.P. Morgan and/or Raymond James and provided to the Company and the Board.  Accordingly, this action seeks to enjoin the Proposed Transaction.

8.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.     Plaintiff is a citizen of Virginia and, at all times relevant hereto, has been a Paya stockholder.

10.    Defendant Paya operates as an independent integrated payments platform.  Paya is incorporated under the laws of the State of Delaware and has its principal place of business at 303

Perimeter Center North, Suite 600, Atlanta, GA 30346.  Shares of Paya common stock are traded on the Nasdaq Stock Exchange under the symbol "PAYA".

11.     Defendant Aaron Cohen ("Cohen") has been a Director of the Company at all relevant times and serves as the Chairman of the Company Board.

12.     Defendant Jeff Hack ("Hack") has been a director of the Company at all relevant times and serves as the Company's Chief Executive Officer ("CEO").

13.     Defendant Debora Boyda ("Boyda") has been a director of the Company at all relevant times.

14.     Defendant Oni Chukwu ("Chukwu") has been a director of the Company at all relevant times.

15.     Defendant Mike Gordon ("Gordon") has been a director of the Company at all relevant times.

16.     Defendant KJ McConnell ("McConnell") has been a director of the Company at all relevant times.

17.     Defendant Collin Roche ("Roche") has been a director of the Company at all relevant times.

18.     Defendant Sid Singh ("Singh") has been a director of the Company at all relevant times.

19.     Defendant Anna May Trala ("Trala") has been a director of the Company at all relevant times.

20.     Defendant Stuart Yarbrough ("Yarbrough") has been a director of the Company at all relevant times.

21.     Defendants identified in ¶¶ 11 - 20 are collectively referred to as the "Individual Defendants."

22.     Non-Party Parent is a global payments technology company with headquarters in Montreal, Canada.

23.     Non-Party Merger Sub is an affiliate of Parent created to effectuate the proposed transaction.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

27.     Paya, through its subsidiaries, operates as an independent integrated payments platform. The Company operates through two segments, Integrated Solutions and Payment Services. The Company processes payments through credit and debit card, automated clearing house, and check payments. Paya serves customers through distribution partners with focus on targeted verticals, such as B2B goods and services, healthcare, faith-based and non-profit, government and utilities, and education markets.

28.     The Company's most recent clinical performance press release, revealing results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid operational performance.  For example, in the November 4, 2022 press release announcing its 2022 Q3 Financials, the Company highlighted such positive results as an increase in payment volume of 14.3% year-on-year from $11.1 billion to $12.6 billion.

29.     Speaking on these positive results, Company CEO and defendant Hack stated as follows, "Paya again delivered a strong quarter of financial results, led by our integrated solutions and ACH businesses."  Cooper continued speaking on the Company's positive future prospects, "We continue to see momentum in our high growth and underpenetrated middle market partners in durable end-markets, principally B2B, not-for-profit, healthcare and government. We remain on track to deliver on our 2022 technology investments and believe that the combination of our durable end markets along with strong profitability positions us well for continued growth."

30.     These positive clinical results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Paya.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

31.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Paya to enter into the Proposed Transaction without providing requisite information to Paya stockholders such as Plaintiff.

***The Flawed Sales Process***

32.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.  Moreover, the Recommendation is materially deficient in the information it fails to provide.

33.     The Recommendation Sheet fails to disclose whether a committee of disinterested directors was appointed to run the sale process, and if so, the specific powers that committee had in evaluating a potential transaction.  This is especially of note here, as the Recommendation Statement reveals that Defendants, Hack, Yarbrough, McConnell, Trala, Cohen, and Roche (representing a majority of the Board) are affiliated with GTCR-Ultra Holdings, LLC ("GTCR-Ultra") the largest stockholder of the Company, which owns approximately 34.3% of the outstanding shares of the Company.  Significantly, GTCR-Ultra has agreed to enter a tender and support agreement pledging to tender all of its Company stock in favor of the Proposed Transaction, significantly increasing the likelihood of its consummation.

34.     The Recommendation Statement also fails to disclose adequate reasoning it was necessary to engage two separate financial advisors at a cost of approximately $12 million each.

35.     In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third

parties, including Nuvei, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.

36.     The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Nuvei, throughout the sales process, if any, would fall away.

37.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

38.     On January 9, 2023, Paya and Nuvei issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> MONTREAL and ATLANTA, Jan. 09, 2023 (GLOBE NEWSWIRE) -- Nuvei Corporation ("Nuvei" or the "Company") (Nasdaq: NVEI) (TSX: NVEI), the Canadian fintech company, and Paya Holdings Inc. ("Paya") (Nasdaq: PAYA), a leading provider of integrated payment and commerce solutions in the U.S., today announced that they have entered into a definitive agreement whereby Nuvei will acquire Paya in an all-cash transaction at USD $9.75 per share for total consideration of approximately $1.3 billion.
>
> "The proposed acquisition of Paya is a powerful next step in the evolution of Nuvei, creating a preeminent payment technology provider with strong positions in global eCommerce, Integrated Payments and business-to-business ("B2B")," said Philip Fayer, Nuvei's Chair and Chief Executive Officer. "The proposed transaction will combine two people-first, technology-led, high-growth payment platforms. It will accelerate our integrated payment strategy, diversify our business into key high-growth non-cyclical verticals with large addressable end markets and enhance the execution of our growth plan."
>
> "We are pleased to have reached this transaction with Nuvei, which is a testament to the incredible talent at Paya, and will deliver immediate and significant cash value to Paya shareholders," said Jeff Hack, Paya's Chief Executive Officer. "We continue to see strong momentum in our high-growth and underpenetrated middle market partners in durable end-markets, and believe that Nuvei's resources will

enable us to continue our mission of solving complex business problems with easy-to-use payment solutions."

**Strategic Rationale and Benefits of the Transaction**

- Enhances Nuvei's ability to execute on high-growth integrated payment opportunities

  o Paya's deep software integrations with 300+ independent software vendor ("ISV") platforms and end-to-end commerce solutions position Nuvei to capitalize on the domestic and global software-led market opportunity

  o Plugs Paya's highly complementary integrated payment capabilities into Nuvei's global technology platform for an enhanced customer proposition and incremental growth opportunities

  o Integrated payments is the highest-growth card payments distribution channel in the U.S.[1] For 2021, roughly 41% of new merchants in the US were signed from the integrated payments channel[2]

- Diversifies Nuvei's business across high-growth, underpenetrated and non-cyclical end markets each with a large estimated total addressable market ("TAM")

  o Paya has a strong footprint in key non-cyclical verticals, including B2B goods and services (estimated $1.2 trillion TAM)[3], healthcare (estimated $235 billion TAM)[4], non-profit and education (estimated $145 billion TAM)[4], and government and utilities (estimated $130 billion TAM)[4]

  o Expands Nuvei's capabilities into large and growing B2B

  o Paya's deep enterprise resource planning (ERP) integrations and end-to-end commerce solutions position Nuvei to capitalize on the domestic and global B2B opportunity

  o The U.S. B2B payments middle market is expected to grow at a 10%+ compound annual growth rate (CAGR) (2019-2026) with an estimated market size of $2.3 trillion in 2026[3]

- Amplifies Nuvei's existing growth strategy

  o Establishes Paya's leading ISV and B2B capabilities in Nuvei's global markets

  o Accelerates growth by offering Nuvei's solutions into Paya's partners and customers in the U.S.

  o Broadens strong ISV and eCommerce capabilities to enter new markets

  o Expands M&A scope to include ISV, B2B and proprietary software opportunities

- Reinforces Nuvei's compelling financial profile

  o On a combined basis[5] for the last twelve months ("LTM") ended September 30, 2022, Combined Total volume[6] was approximately $167 billion,

Combined Revenue[7] was approximately $1.1 billion, and Combined Adjusted EBITDA[7] was approximately $429 million (which does not include up to $21 million of estimated run-rate cost synergies expected to be achieved within 24 months)[8], and Combined Adjusted EBITDA less capital expenditures was approximately $380 million[7]. Nuvei's LTM net income and revenue was $65 million and $835 million, respectively, and Paya's LTM net income and revenue was $9.5 million and $277 million, respectively.

**Transaction Details**

The transaction has been unanimously approved by each party's Board of Directors, and the Board of Directors of Paya intends to recommend the transaction to Paya's stockholders. Pursuant to the terms of the agreement, Nuvei will commence a tender offer to acquire all outstanding shares of Paya for $9.75 per share in cash (approximately $1.3 billion of enterprise value ("EV") for Paya). The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Paya's outstanding shares, the expiration or termination of the antitrust waiting period, and other customary conditions. Following the successful completion of the tender offer, Nuvei will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price. The transaction is expected to close by the end of the first quarter of 2023.

The purchase price represents a 25% premium to the January 6, 2023 closing price and a 30% premium to the 90-day volume-weighted average share price ("VWAP"). The implied transaction multiple is approximately 13x EV/2023E Adjusted EBITDA[9] based on consensus estimates for Paya (once the full benefit of expected synergies is taken into account). Paya's net income for the LTM period ended September 30, 2022 was $9.5 million.

Nuvei expects to finance the acquisition with a combination of cash on hand, an existing credit facility and a new committed $600 million first lien secured credit facility (the "New Credit Facility").[10]

Nuvei's net leverage ratio, defined as the ratio of consolidated net debt outstanding (outstanding credit facilities less cash), to consolidated adjusted EBITDA, calculated in accordance with the terms of Nuvei's credit agreement, is expected to be less than 3x upon (and giving effect to) the closing of the transaction.

The proposed transaction is expected to deliver up to $21 million of estimated run-rate cost synergies within 24 months, as well as provide attractive revenue synergy upside potential by bringing Nuvei's global capabilities as additional offerings to Paya's partners and customers. The transaction is expected to be accretive to adjusted EPS in 2023.

An investment fund affiliated with GTCR LLC has entered into a tender and support agreement pursuant to which it has agreed, among other things, to tender its Paya shares pursuant to the tender offer, subject to certain conditions. This stockholder currently represents approximately 34% of the outstanding shares of Paya's common stock.

The Merger Agreement also includes customary termination provisions for both Nuvei and Paya, and provides that, in connection with the termination of the Merger Agreement under specified circumstances, including termination by Paya to accept and enter into an agreement with respect to a superior proposal, Paya will pay Nuvei a termination fee of approximately $38 million.

**Advisors**

Barclays Capital Inc. is serving as the lead financial advisor to Nuvei. BMO Capital Markets, RBC Capital Markets and Evercore Group LLC have also provided financial advice to Nuvei.

Bank of Montreal and Royal Bank of Canada have provided committed financing to Nuvei. Davis Polk & Wardwell LLP and Stikeman Elliott LLP are serving as legal advisors.

J.P. Morgan Securities LLC and Raymond James & Associates, Inc. are serving as financial advisors to Paya and Kirkland & Ellis LLP is serving as Paya's legal advisors.

### *Potential Conflicts of Interest*

39.     The breakdown of the benefits of the deal indicates that Paya insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Paya.

40.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company, which will be paid out as follows:

| Name of Executive Officer or Director | Number of Shares (#) | Cash Consideration for Shares ($) |
|---|---|---|
| Jeffrey Hack (Chief Executive Officer) | - | - |
| Glenn Renzulli (Chief Financial Officer) | - | - |
| Benjamin Weiner (EVP, Head of B2B and Government) | 26,098 | 254,456 |
| Balaji Devarasetty (Chief Information Officer) | 34,950 | 340,763 |
| Melinda Doster (General Counsel and Secretary) | 18,027 | 175,760 |
| Michele Shepard (Former Chief Commercial Officer) | 53,824 | 524,784 |
| KJ McConnell (Director) | - | - |
| Oni Chukwu (Director) | 4,281 | 41,738 |
| Sid Singh (Director) | 4,600 | 44,850 |
| Anna May Trala (Director) | - | - |
| Stuart Yarbrough (Director) | - | - |
| Aaron D. Cohen (Director) | - | - |
| Collin E. Roche (Director) | - | - |
| Michael J. Gordon (Director) | 17,886 | 174,389 |
| Deb Boyda (Director) | - | - |

41.     Additionally, the Recommendation Statement fails to account for accounting of all stockholders who own more than 5% of the Company's outstanding stock, despite at least one such holder existing.

42.     In addition, Company insiders, currently own large, illiquid portions of stock options, restricted share, or other equity award, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.  Notably, these amounts, not shared with Company public stockholders such as Plaintiff, will be paid out as follows:

| Name of Executive Officer or Director | Number of Shares Subject to Unvested Options (#) | Number of Shares Subject to Vested Options (#) | Cash Consideration for Vested Options ($) |
|---|---|---|---|
| Jeffrey Hack (Chief Executive Officer) | 448,260 | | |
| Glenn Renzulli (Chief Financial Officer) | 246,543 | | |
| Benjamin Weiner (EVP, Head of B2B and Government) | 163,705 | | |
| Balaji Devarasetty (Chief Information Officer) | 137,928 | 30,000 | 8,100 |
| Melinda Doster (General Counsel and Secretary) | 80,031 | 16,000[1] | |
| Michele Shepard (Former Chief Commercial Officer) | - | - | - |
| KJ McConnell (Director) | - | - | - |
| Oni Chukwu (Director) | - | - | - |
| Sid Singh (Director) | - | - | - |
| Anna May Trala (Director) | - | - | - |
| Stuart Yarbrough (Director) | - | - | - |
| Aaron D. Cohen (Director) | - | - | - |
| Collin E. Roche (Director) | - | - | - |

| | | | |
|---|---|---|---|
| Michael J. Gordon (Director) | - | - | - |
| Deb Boyda (Director) | - | - | - |

| Name of Executive Officer or Director | Number of Unvested RSUs (#) | Cash Consideration for Unvested RSUs ($) |
|---|---|---|
| Jeffrey Hack (Chief Executive Officer) | 149,420 | - |
| Glenn Renzulli (Chief Financial Officer) | 82,181 | - |
| Benjamin Weiner (EVP, Head of B2B and Government) | 64,942 | - |
| Balaji Devarasetty (Chief Information Officer) | 196,556 | - |
| Melinda Doster (General Counsel and Secretary) | 32,010 | - |
| Michele Shepard (Former Chief Commercial Officer) | - | - |
| KJ McConnell (Director) | - | - |
| Oni Chukwu (Director) | 39,195 | 382,153 |
| Sid Singh (Director) | 40,472 | 394,602 |
| Anna May Trala (Director) | - | - |
| Stuart Yarbrough (Director) | 22,072 | 215,202 |
| Aaron D. Cohen (Director) | - | - |
| Collin E. Roche (Director) | - | - |
| Michael J. Gordon (Director) | 28,583 | 278,684 |
| Deb Boyda (Director) | 42,445 | 413,839 |

| Name of Executive Officer or Director | Number of Class B Units (#) | Number of Class C Units (#) | Estimated Proceeds ($) |
|---|---|---|---|
| Jeffrey Hack (Chief Executive Officer) | 728,384 | 16,249,071 | 19,586,256 |
| Glenn Renzulli (Chief Financial Officer) | 204,154 | 4,704,792 | 5,662,940 |
| Benjamin Weiner (EVP, Head of B2B and Government) | 300,000 | 1,214,516 | 1,778,040 |
| Balaji Devarasetty (Chief Information Officer) | - | - | - |
| Melinda Doster (General Counsel and Secretary) | - | - | - |
| Michele Shepard (Former Chief Commercial Officer) | - | - | - |
| KJ McConnell (Director) | - | - | - |
| Oni Chukwu (Director) | - | - | - |
| Sid Singh (Director) | - | - | - |
| Anna May Trala (Director) | - | - | - |
| Stuart Yarbrough (Director) | - | 613,975 | 807,404 |
| Aaron D. Cohen (Director) | - | - | - |
| Collin E. Roche (Director) | - | - | - |
| Michael J. Gordon (Director) | - | - | - |
| Deb Boyda (Director) | - | - | - |

43.     In addition, certain employment agreements with certain Paya executives, entitle such executives to significant amounts of money conditioned upon the consummation of the merger and/or their termination.  These 'golden parachute' packages are significant and will grant

each director or officer entitled to them significant sums of money, compensation not shared by Plaintiff as follow:

| Name | Cash ($)[1] | Unvested Options ($)[2] | Unvested RSUs ($)[3] | Unvested Class C Units ($)[4] | Perquisites/ Benefits ($)[5] | Total ($) |
|---|---|---|---|---|---|---|
| *Executive Officers* | | | | | | |
| Jeffrey Hack (Chief Executive Officer) | 2,250,000 | 2,075,444 | 1,456,845 | 5,575,412 | 53,577 | 11,411,277 |
| Glenn Renzulli (Chief Financial Officer) | 400,000 | 1,141,494 | 801,265 | 1,614,316 | | 3,957,075 |
| Benjamin Weiner (EVP, Head of B2B and Government) | 382,460 | 647,961 | 633,185 | - | - | 1,663,606 |
| Michele Shepard (Former Chief Commercial Officer) [6] | - | - | - | - | - | |

44.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45.     Thus, while the Proposed Transaction is not in the best interests of Paya, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

46.     On January 24, 2023, the Paya Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or

provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

47.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

a.   Adequate information as to whether a committee of disinterested directors was appointed to lead the sales process and if so, the identity of the directors who sat on said committee, and the powers to which they were authorized in reference to any proposed transaction;

b.   Adequate information as to why the Board engaged both J.P. Morgan and Raymond James at a cost of approximately $12 million each rather than engage a single financial advisor;

c.   Whether the terms of any confidentiality agreements entered during the sales process between Paya on the one hand, and any other third party (including Nuvei), if any, on the other hand, differed from one another, and if so, in what way;

d.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Nuvei) throughout the sales process, if any, would fall away; and

    e.   The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Paya's Financial Projections*

48.    The Recommendation Statement fails to provide material information concerning financial projections for Paya provided by Paya management and relied upon by J.P. Morgan and Raymond James in its analyses.  The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

49.    Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, J.P. Morgan notes that it reviewed, "certain internal financial analyses and forecasts prepared by the management of the Company relating to its business." Similarly, Raymond James noted it reviewed, "certain information related to the historical condition and prospects of the Company, as made available to Raymond James by or on behalf of the Company, including, but not limited to, financial projections prepared by the management of the Company."

50.    The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Paya management provided to the Board, J.P. Morgan, and Raymond James.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's

inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

51.     With regard to projections created by Paya management, the Recommendation Statement fails to disclose material line items for all projection metrics provided, including specifically:

> a.   Adjusted EBITDA, including the underlying inputs, metrics, and assumptions used to determine this metric, including specifically: gross profit, operating expenses, and public company costs.

52.     The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

53.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

54.     Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of J.P. Morgan's and Raymond James' financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction.  As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P. Morgan*

55.     In the Recommendation Statement, J.P. Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail

to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

56.     With respect to the *Public Trading Multiples*, the Recommendation Statement fails to disclose the following:

     a.   The specific inputs used to calculate the firm value for the Company, specifically including: equity value, net debt or net cash, investments in marketable securities, unconsolidated investments, and non-controlling interests (all as of January 6, 2023);

     b.   The Firm Value for the Company, Parent, and all compared companies calculated; and

     c.   The specific inputs, metrics, and assumptions used to determine the utilized trading multiple reference range of 9.5x to 13.0x for the Company's FV / 2023E Adj. EBITDA.

57.     With respect to the *Selected Transactions Analysis*, the Recommendation Statement fails to disclose the following:

     a.   The specific value of each selected precedent transaction;

     b.   The specific date on which each selected precedent transaction closed; and

     c.   The specific inputs, metrics, and assumptions used to determine the utilized transaction multiple reference range for FV / NTM Adj. EBITDA of 13.0x to 18.5x.

58.     With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

a.   The range of terminal values for the Company calculated;

b.   The specific inputs, metrics, and assumptions used to determine a the utilized perpetual growth rate range of 2.5% to 3.5%;

c.   The specific inputs, metrics, and assumptions used to determine a the utilized discount rate range of 9.5% to 10.5%; and

d.   Paya's weighted average cost of capital utilized.

59.   With respect to the *Analyst Price Target Analysis*, the Recommendation Statement fails to disclose the following:

a.   The specific price targets utilized; and

b.   The identity of the firm and/or analysts that created the utilized price targets.

60.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

61.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Paya stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Raymond James*

62.   In the Recommendation Statement, Raymond James describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions

fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

63.    With respect to the *Selected Companies Multiples*, the Recommendation Statement fails to disclose the following:

    a.   The specific LTM EV/EBITDA for each compared company calculated; and

    b.   The specific 2023E EV/EBITDA for each compared company calculated.

64.    With respect to the *Selected Transactions Analysis*, the Recommendation Statement fails to disclose the following:

    a.   The specific LTM EV/EBITDA for each compared transaction calculated;

    b.   The specific CY EV/EBITDA for each compared transaction calculated;

    c.   The specific LTM Implied Share Price for each compared transaction calculated;

    d.   The specific CY Implied Share Price for each compared transaction calculated;

    e.   The specific value of each selected precedent transaction; and

    f.   The specific date on which each selected precedent transaction closed.

65.    With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

    a.   The specific inputs, metrics, and assumptions used to determine a the utilized perpetual growth rate range of 2% to 3%;

    b.   The range of terminal values for the Company calculated;

    c.   The specific inputs, metrics, and assumptions used to determine a the utilized discount rate range of 9% to 11%; and

    d.   Paya's weighted average cost of capital utilized.

66.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

67.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Paya stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

### FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

68.    Plaintiff repeats all previous allegations as if set forth in full herein.

69.    Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

70.    Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

71.    The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth

above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

72.      The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

73.      The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

74.      The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

75.      Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

76.      Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

77.      Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

78.      Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

79.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

80.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

81.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

82.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

83.     Plaintiff repeats all previous allegations as if set forth in full herein.

84.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

85.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

86.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Paya' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

87.     The Individual Defendants acted as controlling persons of Paya within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Paya to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Paya and all of its employees.  As alleged above, Paya is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.

By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 1, 2023

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Attorneys for Plaintiff*